quired to elect between causes of action. There was no misjoinder, therefore, of causes of action.

[4] But if it had been true, as contended by the defendants, that misjoinder was disclosed by the plaintiff's evidence, that fact, it is clear, would not entitle the defendants to a directed verdict in their favor. Their remedy was to move the court at the conclusion of the testimony to require the plaintiff to elect as against which of the defendants he would proceed. 21 Cyc. 653; French v. Central Construction Co., 76 Ohio St. 509, 81 N. E. 751, 12 L. R. A. (N. S.) 669, 118 Am. St. Rep. 891.

[5] As to the other grounds of the motion, it was shown that the plaintiff was paid by the checks of the Katalla Company, and upon the case made by the plaintiff there was evidence to go to the jury tending to prove the negligence of the defendant in not properly lighting the dangerous opening in the platform, or in failing to guard the same by railing; precautions which would necessarily be suggested by reasonable care for the safety of the employés. The defense of contributory negligence of the plaintiff as a complete defense was eliminated by the uncontradicted evidence that both the defendants were common carriers.

[6] We are precluded from considering the assignments of error which are based upon instructions to the jury and refusals to instruct, for the reason that it does not appear that timely exceptions were taken to the instructions so given or denied. On May 10, 1913, two days after the jury had returned their verdict, the plaintiffs in error filed in the court below a paper containing their exceptions to the court's instructions and refusals to instruct; and it does not appear in the bill of exceptions that prior to that date, or at any time during the trial, any such exceptions were taken. It seems unnecessary to cite authorities to the proposition that exceptions to the charge taken after the jury had brought in a verdict are of no avail in an appellate court. Reference may be made to Western Union Telegraph Co. v. Baker, 85 Fed. 690, 29 C. C. A. 392, and cases there cited. Bidwell v. George B. Douglas Trading Co., 183 Fed. 93, 105 C. C. A. 385, and Star Co. v. Madden, 188 Fed. 910, 110 C. C. A. 652.

The judgment is affirmed.

---

### HOLSTEIN v. ZEELAND ORNAMENTAL CO.

(Circuit Court of Appeals, Sixth Circuit. February 3, 1914.)

#### No. 2,408.

PATENTS (§ 328*)—INFRINGEMENT—PROCESS OF MAKING FABRIC-COVERED ORNAMENTS.

The Holstein patents, No. 683,425, for a process of making fabric-covered ornaments in which a plastic material is pressed into ornamental configuration by means of a die and the fabric caused to adhere thereto in a single operation, and for the product of such process, and No. 779,651, for a similar process in which two operations are required, construed, and *held* not infringed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Suit in equity by Adolph M. Holstein, doing business under the name of the Syracuse Ornamental Company, against the Zeeland Ornamental Company. Decree for defendant, and complainant appeals. Affirmed.

The following is the opinion of the District Court by 'Sessions, District Judge:

Complainant is the owner of two patents (Nos. 683,425 and 779,651), relating to claimed improvements in the art, process, and method of manufacturing cloth or fabric-covered ornaments. The bill of complaint is in the usual form alleging infringement and unfair competition, and praying for an injunction, discovery, and an accounting with a decree for profits and damages. The defendant in its answer denies infringement and unfair competition, and alleges the invalidity of the patents for lack of invention and novelty. The question of infringement is the principal one to be determined.

In the specification of patent No. 683,425, it is stated:

"This invention relates to improvements in the art and process of manufacturing fabric-covered ornaments or moldings, the primary object being to reduce to a minimum the cost of producing ornamental fabric-covered surfaces of any desired configuration by combining an adhesive plastic or other material with a fabric or equivalent facing and simultaneously pressing the fabric-covered surface into the desired ornamentation or configuration. * * *

"In the art of manufacture of fabric-covered ornaments and moldings it has been the practice to first produce the ornamented surface on a plastic or other material, and then to apply the fabric covering to the ornamented surface by hand, which process, it is well known, is laborious, expensive, and entirely impracticable in extremely intricate and fine ornamentation or in extra heavy and sharp relief work, and that even in ordinary ornamentation the sharpness of the relief or configuration is frequently lost by the inability of the operator to force the fabric into contact with every minute detail of such configuration.

"Our improved method or process consists, broadly: First, in the mechanical application of the fabric or equivalent facing to any ornamented or plain surface by a single operation; second, the simultaneous formation of the same configuration or ornamentation in both the plastic material and fabric covering or facing; and, third, the pressing together in one die or mold of an adhesive plastic body and a fabric, with the fabric adjacent to the negative mold or die, whereby the ornamentation is produced, first, upon the fabric and then upon the plastic material, and both are caused to adhere to each other. * * *

"The essential steps in the process of making fabric-covered ornaments consists, first, in interposing the fabric between the plastic material and the negative die and then pressing the whole by mechanical means against the negative, whereby the contour of the negative is positively and simultaneously transmitted to the fabric and to the plastic material by a single operation. The plastic material being provided with an adhesive element causes the fabric to retain the same configuration as the die and plastic material, and the fabric serves to reinforce the plastic body, which on account of its pliability may be readily bent and made to conform to any contour to which the ornament or molding may be applied."

Claims of the inventors are stated as follows:

"1. The method and process of making fabric-covered ornaments or moldings consisting in the mechanical application of a fabric to an ornamented surface whereby the fabric in its natural dry state is made to assume the same configuration as said ornament-surface without further treatment.

"2. The method and process of making fabric-covered ornaments or moldings consisting in subjecting a fabric-covered surface of plastic material to pressure against an ornamented surface, whereby the ornamentation is positively and simultaneously stamped into the fabric and plastic material, said

fabric being applied to the surface of the plastic material in its natural dry state, and made to adhere thereto without further treatment.

"3. The method and process of making fabric-covered ornaments or moldings consisting in interposing a fabric between a yielding surface of a body of material and an ornamented surface and then forcing the whole against said ornamented surface for simultaneously producing a positive impression in the fabric and yielding surface, said fabric being forced into the intaglio parts of the ornamented surface and made to adhere thereto without additional treatment.

"4. As a new article of manufacture, a body of permanently pliable material containing an adhesive element and having an ornamented surface and a fabric facing of silk, satin, broadcloth, or plush impressed into the same configuration as said ornamented surface."

Claims 1, 2 and 3, considered in connection with the specification, are correctly construed and interpreted by complainant's expert witness:

"The fundamental feature of novelty in each of these claims therefore consists in pressing a cloth-covered plastic body against the negative ornamental surface of a mold under mechanical pressure whereby the positive ornamentation is simultaneously impressed in the fabric and plastic body corresponding in minutest detail to the surface of the negative.

"The other broad feature of novelty of the process consists in causing the cloth to adhere to all parts of the ornamented surface by the same pressure which formed the ornamentation."

Claim 4 necessarily refers and pertains to the article of manufacture produced by the process set forth in claims 1, 2, and 3 and the specification, and must be construed and interpreted in the same way.

In his specification of patent No. 779,651, complainant says:

"This invention relates to improvements in the method of manufacturing cloth-covered ornaments for burial caskets. These ornaments are made of a composition material of a putty nature, which is molded to the desired form while in a plastic or semiplastic condition, and contains a suitable bond and an adhesive substance which are thoroughly mixed with the putty base, so that by slightly steaming the ornament after being molded it becomes easily pliable, but when cold becomes hard, although tenacious and somewhat pliable. Heretofore I have made these ornaments under my patent No. 683,425, dated October 1, 1901, by applying the cloth in a dry state to the ornamental surface while the composition material was in a somewhat green state—that is, the cloth was applied by the same dies by which the ornament was formed and during the operation of forming the ornament. This has proved to be a very satisfactory method of applying the cloth; but I have found that different manufacturers cover their caskets with different makes of cloth, and that these cloths vary slightly in shade or tint, and it therefore becomes necessary for each manufacturer for whom my ornaments are made to supply me with their particular shade of cloth, so that there may be no difference between the color of the cloth in the ornaments and that on the body of the casket. The orders for these ornaments are necessarily filled in great haste, and it therefore becomes necessary to provide some means of applying the cloth to the ornaments as soon as the order is received. In order that this may be done expeditiously, a certain quantity of adhesive substance, as cement or glue, is thoroughly mixed in the composition, after which the ornaments are pressed to the desired form without applying the cloth, and, of course, these ornaments soon become cold and dry, and I have found that by slightly steaming the ornamented surface the cloth may be readily applied, either by hand or in the same press or dies by which the ornament was made, the latter method being preferred, as it impresses the cloth more evenly against all parts of the adhesive surface.

"My improvement, therefore, consists in steaming the ornamented surface, which is done very quickly by simply moving the ornament across a jet of steam, after which the cloth is applied by the same dies which form the ornament and by hand, and the adhesive element, being moist, readily grips the cloth and soon cools, thus firmly securing the cloth to the ornament. The work of steaming is done almost instantaneously, and therefore permits a

large number of these ornaments to be covered within a very short period of time."

His claim is thus stated:

"The herein-described method of manufacturing cloth-covered ornaments consisting in mixing with a composite body a quantity of adhesive and then pressing the desired ornamentation in the surface of said body and allowing the composite body to dry; then slightly steaming the ornamented surface to soften the adhesive and immediately, afterward applying the cloth facing, whereby the adhesive is caused to permanently secure the cloth to the composite body."

Defendant's process of manufacturing fabric-covered ornaments is stipulated to be as follows:

"First. The defendant takes a wooden block A, which is routed out in one of its faces as shown at "a" for the purpose of forming a recess, in which recess is placed a material susceptible to receiving an impression, and which subsequently hardens and forms a die b.

"Second. The plastic materials B from which the ornament is made is placed over the die or mold and pressed by suitable appliances into the die. The ornament is then removed from the die and allowed to dry and become hard, and the edges are then removed or trimmed off in any suitable way as if trimmed by hand.

"Third. The plastic material forming the ornament is composed of glue, whiting, rosin, and ground wood.

"Fourth. The dry ornaments are then covered with a coating of glue and the fabric or cloth covering is placed upon the face of the ornament and by hand the fabric is worked into the interstices, depressions, and cavities of the ornaments.

"(The ornament as thus covered is then replaced in the die and pressure again applied to finish the face of the ornament, and more perfectly work the fabric into the interstices, crevices, and valleys of the ornament.)

"Fifth. The ornament with its face covering is then removed from the die and the edges trimmed off and pasted over onto the back of the ornament by hand."

It appears by the proofs that in defendant's process glue is applied to the surface of the ornaments by means of a brush.

An examination of complainant's inventions, as defined and described in the specifications and claims above quoted, and a comparison of such inventions with the method and process employed and used by defendant, clearly demonstrate that there is no infringement of the first patent and none of the second unless the hand coating of the hard and dry face of an uncovered ornament with glue is the equivalent of steaming, and thus softening its surface and making it plastic and adhesive. The alleged infringement consists neither in the ingredients and composition of the plastic material, nor in the formation of the uncovered ornament, but rather in the method and process of combining and uniting the plastic ornament with the fabric cover. The process of attaching a cloth or fabric covering to a surface coated with solvent glue or other adhesive substance, either by hand or by mechanical pressure, is familiar to every one, and very old. The process covered by complainant's first patent consists essentially of impressing the ornamentation or configuration upon the fabric covering and the soft and plastic body of the ornament simultaneously, by subjecting both to the same pressure in a mold or die, and thereby not only producing and completing an ornament in a single operation but also combining its parts into nearly an homogeneous whole. The process of the second patent is essentially the same as that of the first, differing therefrom only in the fact that it calls for an interrupted instead of a continuous operation, or, to speak more accurately, two operations instead of one. In other words, in the process covered by the second patent, the body of the ornament is first molded and formed in the die from the soft and moist materials, then removed from the die and permitted to dry and become hard, then again partially softened and moistened by steaming, and finally replaced in the mold or die with the cloth covering thereon, and by pressure reshaped, remolded, and re-formed, the resultant product being substantially identical with that of the process covered by the first patent.

211 F.—30

Complainant contends that defendant, by applying solvent or liquid glue to the surface of the dry body of the ornament, also softens it and by replacing it in the die with the cloth cover and subjecting both to pressure, not only remolds, re-forms and reshapes the ornament, but also forces the substance of the one into the fabric of the other. He insists that, unless softened and made plastic, the body of the ornament and the additional cloth covering could not be placed in the original mold or die and subjected to pressure without cutting, tearing or otherwise injuring the fabric and defacing the ornamentation. The defendant claims that the green and moist body of the ornament, as it comes from the die or mold in the first instance, will shrink sufficiently in drying to admit into the die the cloth covering in addition to itself. The testimony upon this subject is very conflicting, and it is sufficient to say that the evidence on the part of the defendant is more satisfactory, reasonable, and convincing than that in behalf of complainant.

The evidence does not establish a case of unfair competition and there being no infringement, other questions need not be considered.

A decree will be entered dismissing the bill of complaint, with costs to the defendant to be taxed.

E. A. Thompson, of Syracuse, N. Y. (Howard P. Denison, of Syracuse, N. Y., of counsel), for appellant.

J. N. Clark, of Zeeland, Mich., for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SATER, District Judge.

PER CURIAM. The decree of the district court is affirmed upon the grounds stated in the opinion of Judge Sessions in that court, which is approved.

---

TURNER v. MOORE et al.

(Circuit Court of Appeals, Eighth Circuit. January 19, 1914.)

No. 3801.

1. PATENTS (§ 26*)—INVENTION—COMBINATION OF OLD ELEMENTS.
    It does not constitute patentable invention to bring elements, all of which were clearly disclosed in prior patents, although separately, together in a combination in which each performs merely its old function.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*
    Patentability of combinations of old elements as dependent on results attained, see note to National Tube Co. v. Aiken, 91 C. C. A. 123.]

2. PATENTS (§ 328*)—INVENTION—REINFORCED CONCRETE CONSTRUCTION.
    The Turner patent No. 985,119, for a reinforced concrete building construction, *held* void for lack of invention in view of the prior art.

Appeal from the District Court of the United States for the District of Minnesota; Charles A. Willard, Judge.

Suit in equity by Claude A. P. Turner against Morris E. Moore and Edward J. Scriver, partners under the name of Moore & Scriver. Decree for defendants, and complainant appeals. Affirmed.

For opinion below, see 198 Fed. 134.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes